UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| - v. - | : | |
| RAPHAEL RODRIGUEZ, | : | 07 Cr. 749 (SHS) |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

MICHAEL J. GARCIA
*United States Attorney for the*
*Southern District of New York*
*Attorney for the United States of*
*America*

MICHAEL D. MAIMIN
Assistant United States Attorney,
*Of Counsel*



U.S. Department of Justice

United States Attorney
Southern District of New York

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

July 31, 2008

**BY ECF and HAND**

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

     Re:   *United States* v. *Raphael Rodriguez*,
            07 Cr. 749 (SHS)

Dear Judge Stein:

     The Government respectfully submits this letter in advance of the sentencing of Raphael Rodriguez (the "defendant"), which is scheduled for Monday, August 7, 2008, at 4:00 p.m.

## Offense Conduct

     The defendant was convicted by a jury of a violation of Title 18, United States Code, Section 922(g) on December 12, 2007, following a three-day trial.[1]  As described in greater detail in the Presentence Investigation Report ("PSR" or "Presentence Report") and as elicited during the trial (references to the trial transcript are listed hereafter as "Tr. __"), on July 19, 2007, the defendant, a convicted felon, possessed a .38 caliber Taurus revolver, which previously had been shipped and transported in interstate commerce.

     On July 19, 2007, two New York City Police ("NYPD") officers – Sergeant Kevin To and Officer Christopher Baumann – were on patrol in an unmarked police vehicle on Boston Road in the Bronx, New York, when they heard two gunshots.  (PSR ¶ 4; Tr. 62, 67-68, 158, 166).  After seeing what appeared to be a livery cab drive out of a dead-end street – 179th Street – ducked behind the wheel, the officers turned onto that dead-end street.  (PSR ¶ 5; Tr. 62, 68, 159, 167).  At the dead-end of that street, the officers saw the defendant, standing with his arm

---

[1]      A jury was picked and counsel gave their opening statements on December 10, 2007, all evidence was heard on December 11, 2007, and counsel gave their closing statements, the Court charged the jury and the jury delivered a verdict on December 12, 2007.

Hon. Sidney H. Stein
July 31, 2008
Page 2 of 18

extended, and saw muzzle-flash come from the end of his arm as they heard a gunshot, which they understood to mean that the defendant had just fired a gun. (PSR ¶¶ 5-6; Tr. 63, 68-69, 150, 159-160. 167-68, 195-96).

The officers drove toward the defendant, who started to back up slowly, looking at the unmarked car. (PSR ¶ 6; Tr. 64, 73-74, 148, 161, 168, 196). The officers stopped the car and Sergeant To got out and said "Police. Don't move." (PSR ¶ 6; Tr. 64, 74, 152, 160-61, 168-169). The defendant turned and ran away, running through a gate and along a path that ran behind a building and alongside the Bronx River. (PSR ¶ 6; Tr. 64, 74-79, 161, 169-170). Sergeant To chased the defendant, yelling "stop, police." (PSR ¶ 6; Tr. 64, 78, 170). Although Officer Baumann began to chase the defendant, he then turned and ran into the building in order to cut off the defendant if he should try to escape into the building. (Tr. 161-62, 169-71).

At the end of the path behind the building and alongside the Bronx River, the defendant ran around a chain-link fence, heading toward the door of the building. (PSR ¶ 7; Tr. 64, 81-86). Sergeant To, just feet away from the defendant, again ordered the defendant to stop. (PSR ¶ 7; Tr.64, 82-85). The defendant looked at Sergeant To, and continued running toward the door of the building. (PSR ¶ 7; Tr. 64-65, 83-86). The defendant ran through the door of the building into a vestibule. (PSR ¶ 7; Tr. 65, 86-87). Once inside, however, he encountered a second, locked door. (PSR ¶ 7; Tr. 66, 87, 91, 92). At this point, Sergeant To had run around the chain link fence. (PSR ¶ 7; Tr. 65, 87-88). Rodriguez then exited the building, placed the gun on the ground and surrendered. (PSR ¶ 7; Tr. 65, 87-90).

The gun that the defendant placed on the ground was a Taurus .38 caliber revolver with three spent .38 caliber shells and two live rounds. (PSR ¶ 8, Tr. 89-90). The gun had never been manufactured in the state of New York. (PSR ¶ 9). The defendant, moreover, had been previously convicted of at least three violent felonies. (PSR ¶ 9).

At trial, the defendant testified and admitted that he had, indeed, possessed the Taurus .38 caliber revolver. (Tr. 242-44). He offered a defense of duress, claiming that he had wrestled the gun away from a supposed robber, and that he believed he was running from that supposed robber, and not the police. (Tr. 229-239).

**Guidelines Calculation**

The Presentence Report properly calculated the defendant's Offense Level and Criminal History Category under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines).

Because the defendant had previously been convicted of three violent felonies committed on occasions different from one another, he is subject to the enhanced sentencing provisions of Title 18, United States Code, Section 924(e). Accordingly, the Presentence Report properly determined that the defendant qualifies for treatment as an Armed Career Criminal pursuant to U.S.S.G. § 4B1.4. (PSR ¶ 16). Because the defendant did not use or possess the firearm in connection with a crime of violence or a controlled substance offense, and because the firearm

Hon. Sidney H. Stein
July 31, 2008
Page 3 of 18

possessed by the defendant was not of a type described in Title 26, United States Code, Section 5845(a), the applicable offense level is 33, pursuant to U.S.S.G. § 4B1.4(b)(3)(B). (PSR ¶ 16).[2]

The Presentence Report mistakenly determined that the criminal history points merited by the defendant pursuant to U.S.S.G. § 4A1.1 are seventeen, resulting in a Criminal History Category of VI. (PSR ¶ 53). As the defendant pointed out in his letter-brief dated May 15, 2008 (the "Def. Br."), the defendant did not plead guilty to the attempted assault in the second degree described in the Presentence Report at paragraphs 41-42. (Def. Br. 2). Rather, that charge was consolidated with the attempted assault in the second degree described in the Presentence Report, and therefore generates no additional criminal history points. The defendant, therefore, merits fourteen criminal history points pursuant to U.S.S.G. § 4A1.1, which still results in a Criminal History Category of VI. *See also*, U.S.S.G. § 4B1.4(c) (stating that the criminal history category for an armed career criminal is the greatest of the criminal history category from Chapter Four, Part A, the career offender criminal history category, category VI under certain circumstances or category IV).

The Guidelines range for an Offense Level of 33 and a Criminal History Category of VI is 235-293 months' imprisonment.

## Discussion

A.  **The Defendant Is An Armed Career Criminal Pursuant To Title 18, United States Code, Section 924(e).**

Pursuant to the Armed Career Criminal Act ("ACCA"), any person who violates Title 18, United States Code, Section 922(g), and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e). Among other things, when a defendant qualifies as an Armed Career Criminal, he not only faces a fifteen-year mandatory minimum for a conviction under Title 18, United States Code, Section 922(g), but also loses the benefit of the ten-year maximum sentence prescribed for a generic violation of Title 18, United States Code, Section 922(g) (*see* 18 U.S.C. § 924(a)(2)), and instead faces a

---

[2]  The defendant does not qualify for career offender treatment, pursuant to U.S.S.G. § 4B1.1. The defendant's offense level applicable from Chapters Two and Three would be 26, comprised of a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2) plus a 2-point enhancement for obstruction of justice arising from the defendant's perjurious testimony at trial, pursuant to U.S.S.G. § 3C1.1. Because this offense level is lower than that for which U.S.S.G. § 4B1.4(b)(3)(B) provides, the defendant is subject to the offense level of 33 for which U.S.S.G. § 4B1.4(b)(3)(B) provides. *See* U.S.S.G. § 4B1.4(b). Additionally, the obstruction enhancement does not apply to the offense level set by U.S.S.G. § 4B1.4(b)(3)(B); accordingly, the failure of the Presentence Report to factor in obstruction (*see* PSR ¶ 16) is academic.

Hon. Sidney H. Stein
July 31, 2008
Page 4 of 18

                                            maximum sentence of life. *See Logan* v. *United States*, 128 S.Ct. 475, 479 (2007); *Custis* v. *United States*, 511 U.S. 485, 487 (1994). An Armed Career Criminal is also exposed to the Guidelines set forth in U.S.S.G. § 4B1.4.

      In his letter-brief, the defendant challenges the Presentence Report's conclusion that he is subject to the 15 year statutory minimum term of imprisonment set forth in Title 18, United States Code, Section 924(e). Specifically, the defendant argues that his conviction for grand larceny in the fourth degree (theft from a person), in violation of N.Y. Penal Law § 155.30(5), is not a "violent felony" and therefore does not justify his being sentenced under the Armed Career Criminal Act.[3] (Def. Br. 2).

      The defendant is wrong. The prior conviction at issue necessarily involved "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Although this Circuit has not yet addressed the question of whether a violation of N.Y. Penal Law 155.30(5) qualifies as a violent felony under the Armed Career Criminal Act, several courts in other Circuits have addressed the question with similar statutes, and have uniformly determined that they do so qualify. Those courts' analyses are correct, and such an offense is properly considered a violent felony. Indeed, as discussed below, Lynch's guilty plea, combined with the underlying Supreme Court allocution, clearly establishes that he was convicted of stealing the watch and wallet of another by threat. Additionally, the recent ruling of the Supreme Court in *Begay* v. *United States*, 128 S.Ct. 1581 (2008), does not alter the outcome of this analysis. Indeed, at least one other district court has addressed the issue of whether theft from a person qualifies as a violent felony under the Armed Career Criminal Act since *Begay* was decided, and properly found that it does so qualify.

      Accordingly, the defendant should be sentenced pursuant to the provisions of the Armed Career Criminal Act.

      **1.**        **Legal Standards**

      Title 18, United States Code, Section 922(g) makes it a crime for any person "who has been convicted ... of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." Under the ACCA, a defendant is subject to an enhanced penalty if he or she violates Section 922(g) and has three previous convictions for a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e). As used in this statute:

---

[3]    The defendant concedes, however, that his convictions for attempted murder in the second degree and attempted assault in the second degree are violent felonies and that the violent felonies at issue all occurred on occasions different from one another. (Def. Br. 2).

Hon. Sidney H. Stein
July 31, 2008
Page 5 of 18

>    the term "violent felony" means any crime punishable for a term exceeding one year ... that–
>
>    >    (i) has as an element the use, attempted use, or threatened use of physical force against another; or
>
>    >    (ii) is burglary, arson, or extortion, involved use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* The enhanced penalty set forth in Section 924(e) is a term of imprisonment of not less than 15 years.

In determining whether a conviction is for a violent felony, courts generally employ a "categorical approach," in which the court looks "only to the fact of conviction and the statutory definition of the prior offense" to determine whether it fits within this category. *Taylor* v. *United States*, 495 U.S. 575, 602 (1990). Where the statute at issue reaches conduct that satisfies the violent felony definition and conduct that does not, the court may review limited additional materials to determine whether the conviction was in fact a violent felony. *Shepard* v. *United States*, 544 U.S. 13, 17 (2005).

Such materials are generally limited, however, to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard,* 544 U.S. at 26. The Second Circuit has noted that where "the prior conviction results from a guilty plea ... recourse may be had to other easily produced and evaluated court documents that clearly establish the conduct of which the defendant was convicted." *United States* v. *Palmer*, 68 F.3d 52, 59 (2d Cir. 1995) (internal citations and quotations omitted). A sentencing court may not, however, resort to documents such as police reports or complaint applications. *See Shepard*, 544 U.S. at 16. In so limiting the type of documents that may be reviewed in construing Section 924(e), *Taylor* and *Shepard* reject an approach that would allow courts to examine the facts and circumstances underlying the convictions. *See Shepard*, 544 U.S. at 23 (noting that this limitation is based in part on "avoidance of collateral trials").

    **2.    Discussion**

As set forth in greater detail below, the conviction at issue "involve[d] conduct that present[ed] a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), and should be characterized as a violent felony.

Hon. Sidney H. Stein
July 31, 2008
Page 6 of 18

      a.    **The Defendant's Conviction For Grand Larceny In The Fourth Degree (Theft From A Person)**

On or about September 11, 2006, the defendant pled guilty in New York Supreme Court, Bronx County, to, and was convicted of, grand larceny in the fourth degree (theft from a person), a Class E Felony.

> A person is guilty of Grand Larceny in the fourth degree when he steals property and when: . . . (5) The property, regardless of its nature and value, is taken from the person of another.

N.Y. Penal Law § 155.30(5). The defendant allocuted as follows to the crime:

> THE COURT:    And on the other indictment, 3239 of 2004 it's charged that on or about June 27, 2004 inside of 1478 White Plains Road here in the Bronx what you did is you stole some property from the person of another, from somebody else, you took some money, a watch, I'm sorry, money and a watch from another person; is that right?
>
> THE DEFENDANT:    Yes.
>
> THE COURT:    And you made a small threat to take it, correct?
>
> THE DEFENDANT:    Yes.

(Transcript of September 11, 2006 Plea[4] 12). In particular, the defendant and a co-conspirator robbed an individual, at gunpoint, at his car-service business, taking cash and his wristwatch. (PSR ¶¶ 37-38). The defendant was ultimately sentenced to two-to-four years' imprisonment, and was paroled on February 22, 2007.[5]

---

[4]    A copy of the transcript of the defendant's September 11, 2006 plea is annexed hereto as Exhibit 1.

[5]    The Court need not use the defendant's allocution in order to determine whether he is ACCA-eligible. A *Taylor/Shepard* categorical analysis of the applicability of ACCA to a potential predicate offense of grand larceny in the fourth degree is appropriate. However, if the Court were to determine that the statute is ambiguous in how it can be satisfied, the allocution demonstrates that the crime should serve as an ACCA predicate offense.

### b. Grand Larceny In The Fourth Degree (Theft From A Person) Is A Violent Felony Under The Armed Career Criminal Act

A prior felony is properly characterized as a violent felony pursuant to ACCA if it either: "has as an element the use, attempted use, or threatened use of physical force against another," 18 U.S.C. § 924(e)(2)(B)(i); or "is burglary, arson, or extortion, involved use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). Because grand larceny in the fourth degree (theft from a person) does not have as an element the use, attempted, use, or threatened use of physical force against another, and is not burglary, or extortion and does not involve the use of explosives, to constitute a violent felony under the Armed Career Criminal Act, it must fall under the residual, or "otherwise" clause in Title 18, United States Code, Section 924(e)(2)(B)(ii). *See United States* v. *Lynch*, 518 F.3d 164, 168 (2d Cir. 2008). Interpretations of "violent felony" under ACCA – including under the residual clause – can be informed by interpretations of "crime of violence" in U.S.S.G. § 4B1.2(1) because of the "substantial similarity" of their definitions. *United States* v. *Palmer*, 68 F.3d 52, 55 (2d Cir. 1995).

Actual violence is not necessary to trigger the ACCA provisions; it is sufficient that there is a "serious risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). So, for example, the Second Circuit has held that attempted burglary qualifies as a violent felony under ACCA (*see United States* v. *Andrello*, 9 F.3d 247, 249-50 (2d Cir. 1993)), just as a conspiracy to kidnap qualifies as a "crime of violence" under Title 18, United States Code, Section 924(c)(1). *See United States* v. *Patino*, 962 F.2d 263 (2d Cir. 1988). Indeed, the Supreme Court recently held that "Congress' inclusion of a broad residual provision in clause (ii) indicates that it did not intend the preceding enumerated offenses to be an exhaustive list of the types of crimes that might present a serious risk of injury to others and therefore merit status as § 924(e) predicate offenses." *James* v. *United States*, 127 S.Ct. 1586, 1593 (2007). Moreover, it is not necessary that "every conceivable factual offense covered by [the] statute . . . necessarily present[s] a serious potential risk of injury." *Id.* at 1597. "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.*

Accordingly, for example, a "conviction for rioting in a correctional facility [is] an ACCA predicate offense . . . While not every conceivable instance of rioting in a correctional facility necessarily poses a serious risk of potential injury to others, in the ordinary case, the conduct encompassed by the crime does present such a risk." *United States* v. *Johnson*, 265 Fed Appx. 8, 11 (2d Cir. 2008). So, too, does escape qualify as a violent felony. *See United States* v. *Jackson*, 301 F.3d 59, 63 (2d Cir. 2002).[6]

---

[6] The question of whether escape by failure to report to prison comes within the residual clause of Title 18, United States Code, Section 924(e)(2)(B)(ii) will be decided in the next Term of the Supreme Court when the Supreme Court decides *Chambers* v. *United States*, No. 06-11206 (cert. granted Apr. 21, 2008). In that case, the petitioner's

Hon. Sidney H. Stein
July 31, 2008
Page 8 of 18

There can be little question that taking property "from the person of another," as is required to violate N.Y. Penal Law § 155.30(5), presents a serious risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B)(ii). As one court has stated: "This is clearly the type of situation that could result in violence. Any person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence. Whether or not violence or harm actually results in any given instance is not relevant." *United States* v. *Payne*, 163 F.3d 371, 375 (6th Cir. 1998). In the typical theft from a person, resistance or retaliation is a very serious concern, and it is one that raises the specter of escalated violence. Moreover, in many cases, such as purse- or chain-snatching, there is the additional danger of an injury caused by the very action of the theft itself, which almost always requires purposeful contact either with a person or with property on a person.[7] Indeed, such contact is, itself, inherently aggressive.

Indeed, almost every court to address the issue – using statutes that nearly track the language of N.Y. Penal Law § 155.30(5) – has determined that such crimes are, in fact, violent crimes under the Armed Career Criminal Act. For example:

---

conviction was based on his failure to report to a penal institution. *See United States* v. *Chambers*, 473 F.3d 724, 725 (7th Cir. 2007). At least one court has held that, since the Supreme Court's decision in *Begay* v. *United States*, 128 S.Ct. 1581 (2008), which is described in greater detail below, a "walkaway" escape does not fall under the residual clause. *United States* v. *Nichols*, 07 Cr. 192, 2008 WL 2619961 at *4-*6 (S.D. W.Va. July 3, 2008).

[7] The defendant's plaint that it is possible to shoehorn non-violent, non-aggressive conduct into the statute (Def. Br. 5) is of no avail. First, the Supreme Court specifically counseled that it is not necessary that "every conceivable factual offense covered by [the] statute . . . necessarily present[s] a serious potential risk of injury." *James*, 127 S.Ct. at 1597. "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.* Second, the defendant cites three cases for the proposition that grand larceny in the fourth degree (theft from a person) can be satisfied by non-violent, non-aggressive conduct. (Def. Br. 5). The defendant misreads these cases. Two cases cited by the defendant as examples involve contact with the person or property on the person, which gives rise to the significant possibility of violence in resistance. *See People* v. *Haynes*, 91 N.Y.2d 966, 967 (1998) ("While sitting back in the chair, complainant felt the buckle on the purse strap being pulled across her back as defendant grabbed it"); *People* v. *Walker*, 588 N.Y.S.2d 160 (1992) (holding that a physical picking of another's pocket is sufficient to satisfy the statute). The third case – *People* v. *Auguste*, 728 N.Y.S.2d 8 (N.Y. App. Div. 2001) – stands for precisely the *opposite* proposition, holding that a purse taken off the back of a chair while the victim – an undercover officer – was leaning forward and therefore did not realize it was taken at first *did not* constitute grand larceny in the fourth degree (theft from a person).

Hon. Sidney H. Stein
July 31, 2008
Page 9 of 18

- The First Circuit held that a violation of Mass. Gen. L. ch. 266 § 25(b) – which provides for a prison term of up to five years for one who "steal[s] from the person of another" – is a crime of violence under U.S.S.G. § 4B1.2(1)(ii) that presents "a sufficiently 'serious potential risk' to count towards enhancement," even if "the crime potentially embraces a broad range of non-violent conduct." *United States* v. *De Jesus*, 984 F.2d 21, 23-25 (1st Cir. 1993) (quoting *Taylor* v. *United States*, 495 U.S. 575, 599 (1990)).

- The Fourth Circuit concluded that a violation of D.C. Code § 22-2901, which was a broad robbery statute and, in a case at issue, had been used for "essentially a pickpocketing offense," served as an ACCA predicate offense. *United States* v. *Mobley*, 40 F.3d 688, 691, 696 (4th Cir. 1994).

- Earlier this year, the Fifth Circuit held that grand theft from a person in violation of the former section 487(2) of the California Penal Code[8] – which defined grand theft from a person as "theft committed . . . when the property is taken from the person of another" – was a violent crime under the residual clause of Title 18, United States Code, Section 924(e)(2)(B)(ii). *See United States* v. *Hawley*, 516 F.3d 264, 269-72 (5th Cir. 2008). The Fifth Circuit has also held that felony theft from a person in violation of Tex. Penal Code § 31.03(e)(4)(B) – which states that "an offense under this section is a state jail felony if, regardless of value, the property is stolen from the person of another" – is a violent felony under Section 4B1.2 of the Sentencing Guidelines, stating that it "involves conduct that presents a serious potential risk of physical injury to another" because it "involves an inherent risk of injury to the victim." *United States* v. *Hawkins*, 69 F.3d 11, 13 (5th Cir. 1995).

- The Sixth Circuit, in concluding that a violation of Michigan's larceny-from-the-person statute – which states in its entirety: "[a]ny person who shall commit the offense of larceny by stealing from the person of another shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years," Mich. Comp. Laws Ann. § 750.357 – qualifies as a violent felony under U.S.S.G. § 4B1.2, stated that, even though "the offense of larceny from the person in Michigan does not have as an element force, attempted use of force, or threatened use of physical force, . . . larceny from the person is a crime that creates a substantial risk of physical harm to another" because "although larceny from the person 'typically involves no threat of violence,' the risk of ensuing struggle is omnipresent." *United States* v. *Payne*, 163 F.3d at 373-75 (quoting *United States* v. *De Jesus*, 984 F.2d at 24 (internal quotation marks omitted)).

---

[8] The former section 487(2) of the California Penal Code is now section 487(c) of the California Penal Code.

- The Seventh Circuit has held that theft from a person in violation of Minn. Stat. § 609.52(3)(3)(d)(1) – which defines as a felony "theft . . . [where] the value of the property or services stolen is not more than $1,000, and any of the following circumstances exist: . . . (1) the property is taken from the person of another . . ." – constitutes a violent felony under Title 18, United States Code, Section 924(c), noting that the crime is very similar to generic burglary because "both entail a risk that violence will erupt between the thief and the victim." *United States* v. *Howze*, 343 F.3d 919, 923 (7th Cir. 2003).[9] In a later case, when addressing a similar issue with regard to a violation of 720 Ill. Comp. Stat. 5/16-1(b)(4) – which addresses "[t]heft of property from the person" – the Seventh Circuit held that even a document filed by the State's Attorney describing the actual acts underlying the theft conviction as non-violent did not remove the crime from the scope of ACCA. *See United States* v. *Taylor*, 179 Fed. Appx. 957, 960-62 (7th Cir. 2006).

- The Eighth Circuit has held that, because "the crime of theft from a person involves conduct that presents a serious risk of physical injury," a prior conviction for "reaching into a person's pocket and taking money" was subsumed by the residual clause of Title 18, United States Code, Section 924(c), and, accordingly, was a violent felony under ACCA. *United States* v. *Strong*, 415 F.3d 902, 908 (8th Cir. 2005). *See also*, *United States* v. *Hudson*, 414 F.3d 931, 936 (8th Cir. 2005) (holding that felony theft from a person where "the property [was] taken from the person of another . . ." was a violent felony under the Armed Career Criminal Act); *United States* v. *Griffith*, 301 F.3d 880, 885 (8th Cir. 2002) (holding that conspiracy to commit theft from a person is a violent felony under the Armed Career Criminal Act).

- The Ninth Circuit has held that grand theft from a person in violation of the former section 487(2) of the California Penal Code was a violent felony as defined by the Armed Career Criminal Act. *See United States* v. *Wofford*, 122 F.3d 787, 792-94 (1997).

One court – the Court of Appeals for the District of Columbia – held that if a robbery conviction did not necessarily include a finding that, among other things, "true physical force was used or threatened," and that the crime may have been a pickpocketing by stealth, the crime

---

[9] In *United States* v. *Lee*, 22 F.3d 736 (7th Cir. 1994), the Seventh Circuit decided that theft from a person was not a violent felony under ACCA. The Seventh Circuit explicitly overruled *Lee* in *United States* v. *Howze*, noting that *Lee* "failed to apply *Taylor*'s framework (indeed, did not cite that decision) and did not inquire whether it was significant that every street theft entails a close encounter between criminal and victim, and encounter that creates the potential not only for violence but also for injury caused by the act of taking." *Howze*, 343 F.3d at 924.

was not ACCA-eligible. *United States* v. *Mathis*, 963 F.2d 399, 410 (D.C. Cir. 1992). The case, however, only considered whether such a crime fell under Title 18, United States Code, Section 924(e)(2)(B)(i), which the court believed to be the operative clause for "felonies against the *person*" as opposed to "felonies against *property*." *Id.* at 405. Accordingly, the court did not consider whether such actions would fall under the residual clause, believing the entirety of Title 18, United States Code, Section 924(e)(2)(B)(ii) not to apply at all. This decision has been criticized by the Fourth Circuit. *See United States* v. *Mobley*, 40 F.3d at 696 ("insofar as the D.C. statute [at issue in *Mathis*] outlaws pickpocketing 'by sudden or stealthy seizure or snatching . . . from the person or immediate actual possession of another,' the offense has the requisite potential for serious physical injury to another" and is therefore an ACCA predicate offense).

   **c.**  **The Supreme Court's Decision In *Begay* Does Not Adversely Affect The Analysis Establishing That Grand Larceny In The Fourth Degree (Theft From A Person) Is An Armed Career Criminal Act Predicate Offense**

  In *Begay* v. *United States*, 128 S. Ct. 1581 (2008), the Supreme Court held that to qualify as an ACCA predicate offense under the residual clause – an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" – an offense "must be roughly similar, *in kind* as well as in degree of risk posed, to the [statutory] examples" of burglary, arson, extortion, and offenses involving use of explosives. 128 S. Ct. at 1585 (emphasis supplied). The Court reasoned that, to qualify under the "otherwise" clause, a crime must "typically involve purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 1586. The offense considered in *Begay* – recidivist drunk driving – did not qualify because, even assuming it "presents a serious potential risk of physical injury to another," it "typically" does not involve "purposeful" conduct insofar as it consists of the recidivist violation of the strict liability drunk driving offense. *Id.* at 1587.

  Prior to *Begay*, the principal issue litigated to determine whether an offense was covered by the "otherwise" clause of the Section 924(e) violent-felony definition or Section 4B1.2(a) crime-of-violence definition was whether the risk of injury presented by the offense was comparable to the degree of risk presented by one or more of the statutory examples of burglary, arson, extortion, and use of explosives. See *James* v. *United States*, 127 S. Ct. 1586 (attempted burglary qualifies as a "violent felony"). In addition to that issue, *Begay* now requires consideration of whether an offense typically involves the kind of purposeful, violent, and aggressive conduct characteristic of one or more of the statutory examples.

  *Begay* held that felony drunk driving was not "roughly similar in kind" to the listed offenses because it involved negligent or accidental conduct, not "purposeful" conduct. It was insufficient that most drunk drivers intentionally drink and intentionally drive while drunk because intentional conduct was not an element of the offense. *Begay*, 128 S. Ct. at 1585-1587. The court said that felony drunk driving, a strict liability crime, differed from crimes that "are associated with a likelihood of future violent, aggressive, and purposeful 'armed career criminal'

Hon. Sidney H. Stein
July 31, 2008
Page 12 of 18

behavior." *Id.* at 1588. To qualify under 924(e)(2)(B)(ii) a crime must be similar "in kind, as well as in degree of risk posed to the examples themselves" i.e. burglary, arson, extortion, or crimes involving the use of explosives. *Id.* at 1585.

In *Begay*, in discussing "a prior crime's relevance to the possibility of future danger with a gun," the Court stated: "[C]rimes involving intentional or purposeful conduct (as in burglary and arson) are different from DUI, a strict liability crime. In both instances, the offender's prior crimes reveal a degree of callousness toward risk, but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Begay*, 128 S. Ct. at 1587. The Court further stated: "Were we to read the statute without this distinction, its 15-year mandatory minimum sentence would apply to a host of crimes which, though dangerous, are not typically committed by those whom one normally labels 'armed career criminals.'" *Id.* As examples of such non-included offenses, the Court cited "reckless polluters," "individuals who negligently introduce pollutants into the sewer system," and "seamen whose inattention to duty causes serious accidents." *Id.* These examples do not involve violent and aggressive conduct. On the other hand, violent and aggressive crimes that require a *mens rea* of recklessness – such as reckless assault and theft from a person – are not excluded. Treating such offenses as qualifying under Section 924(e) and Section 4B1.2(a) is consistent with the purposes of the ACCA, as described in *Begay*: A person who commits such a crime is the kind of person who shows "an increased likelihood that" he "might deliberately point [a] gun and pull the trigger," *id.*, and this type of behavior is something associated with "armed career criminals."

In applying the *Begay* requirement that an offense involve "violent" and "aggressive" conduct, this Court must consider the way in which the offenses of burglary, arson, extortion, and use of explosives involve "violent" and "aggressive" conduct: The conduct involved in those offenses "is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim. Crimes committed in such a purposeful, violent, and aggressive manner are potentially more dangerous when firearms are involved. And such crimes are characteristic of the armed career criminal, the eponym of the statute." *Begay*, 128 S. Ct. at 1586 (quotations and citations omitted). For example, "burglary" satisfies this requirement because of the risk that the typical perpetrator will violently and aggressively confront anyone he finds present in the burgled dwelling or law enforcement personnel whom he encounters while committing the offense, *James*, 127 S.Ct. at 1594-1595, and because burglary is a typical offense committed by the career offender, not because burglary necessarily involves aggression or violence against a person.

The reasons that almost every court to address the issue found that theft from a person was a violent felony under the Armed Career Criminal Act apply with equal force after *Begay*. Theft from a person is a purposeful and aggressive crime that "makes it likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay* at 1586. Whereas possessing a gun is not likely to escalate a drunk driving incident, gun possession by those who commit grand larceny by taking property directly from a person would make such criminals more dangerous. Indeed, it would be folly to believe that burglary by breaking into a person's house,

not knowing if she is home, in order to commit a felony therein is somehow more inherently dangerous than committing that felony in the person's known presence by removing something from her body, whether by threat or by simply taking it. (In this way, theft from a person is quite similar in kind to burglary). *See also*, *Howze*, 343 F.3d at 923 ("What theft from a person has in common with generic burglary is that both entail a risk that violence will erupt between the thief and the victim").

Furthermore, theft from a person is more similar to the offenses listed in the statute than those the Court exempts, because "though dangerous, [they] are not typically committed by those whom one normally labels 'armed career criminals.'" *Begay* at 1587. Specifically the Court lists crimes such as reckless pollution, reckless tampering with consumer products, or inattention to duty by seamen. These are all crimes of negligence, not purpose. *See id.* To group theft from a person with negligent strict liability crimes would be to stretch *Begay* past what the Court intended. Indeed, the Second Circuit has already recognized that intent is the key to executing the *Begay* instruction to determine whether a crime is "similar in kind" to the listed offenses:

> *Begay* places a strong emphasis on intentional-purposeful-conduct as a prerequisite for a crime to be considered similar in kind to the listed crimes. The Court was concerned that, without this requirement, the statute would apply to a large number of crimes which pose a great degree of risk to others but are far removed "from the deliberate kind of behavior associated with violent criminal use of firearms."

*United States* v. *Gray*, — F.3d —, 07-3636-cr, 2008 WL 2853470 at *3 (2d Cir. July 25, 2008). Using this analysis, the Second Circuit found that reckless endangerment did not qualify as a "crime of violence" pursuant to the Sentencing Guidelines because the statute "does not criminalize purposeful or deliberate conduct," but rather prohibited merely reckless conduct. *Id.* at *4. Theft from a person, on the other hand, is not a crime of recklessness, but is rather by its nature purely purposeful and intentional.

In the short period of time since *Begay* was decided, one court has already had the opportunity to address the question of whether theft from a person is still a violent felony. That court decided, in no uncertain terms, that it still is. In *United States* v. *Harris*, 08 Cr. 45 (JCC), 2008 WL 2228526 (E.D. Va. May 29, 2008), a district court found that larceny from a person[10] was a crime of violence for the purpose of sentencing as a career offender, but it applied an ACCA analysis in light of *Begay* in order to come to that determination. *Id.* at *2. The court recognized that there was a distinction between larceny and robbery, and noted that Virginia state cases "suggest that larceny from a person typically occurs without violence." *Id.* at *3.

---

[10] "Any person who ... commits larceny from the person of another of money or other thing of value of $5 or more ... shall be guilty of grand larceny." Va. Code § 18.2-95.

Hon. Sidney H. Stein
July 31, 2008
Page 14 of 18

Nonetheless, the *Harris* court noted that burglary – one of the statutory examples under ACCA, and not robbery, was the appropriate analogue:

> The answer to the question before the Court, however, rests not on the differences between larceny from a person and robbery, but on the similarities between the former and burglary of a dwelling. *Begay* defines burglary as "the unlawful or unprivileged entry into a building or other structure with 'intent to commit a crime.'" *Begay*, 128 S.Ct. at 1586. The Court here concurs with the Government's assessment that both larceny from a person and burglary of a dwelling are similar in kind in that they both involve the intentional taking of property of another and the invasion of one's personal space. The Court also agrees that larceny from a person poses at least a similar risk of violence as burglary of a dwelling. As other courts have held, "any person falling victim to a crime involving such an invasion of personal space" as that which occurs in larceny from a person "would likely resist or defend in a manner that could lead to immediate violence." *United States* v. *Payne*, 163 F.3d 371, 375 (6th Cir.1998); *see also United States* v. *De Jesus*, 984 F.2d 21, 25 (1st Cir.1993) (finding that larceny from a person "bears an inherent risk of violent outbreak"); *Garland*, 446 S.E.2d at 630 (remarking that larceny from a person "recognizes enhanced societal concern for conduct that implicates at least a potential for personal assault, conduct that involves the person of the victim and jeopardizes his personal security"). Moreover, unlike the crime at issue in *Begay*, driving under the influence, larceny from a person involves intentional conduct and is as closely associated with a likelihood of future violent, aggressive, and purposeful conduct as burglary from a dwelling. *See Begay*, 128 S.Ct. at 1586-88. Consequently, the Court finds that larceny from a person is roughly similar in kind as well in degree of risk posed to burglary of a dwelling, and is therefore a "crime of violence" within the definition of U.S.S.G. § 4B1.2(a).

*Id.*

The *Harris* court's analysis is correct. And the decisions cited by the defendant to the contrary are unpersuasive. First, the defendant cites *United States* v. *Urbino*, 07 Cr. 10160 (MLB) 2008 WL 1995074 (D. Kan. May 6, 2008), in which a district court found that the crime of fleeing and eluding an officer was not a crime of violence after *Begay*, explaining that, "[t]o be charged with a felony, a person may fail to stop and then drive around a tire deflating device." *Id.* at *2. This did not have any violent aspect to it. *Id.* This is entirely inapposite – unlike the statute at bar in *Urbino*, theft from a person does, indeed, have a purposeful, violent and

Hon. Sidney H. Stein
July 31, 2008
Page 15 of 18

aggressive aspect to it. *See also*, *Gray*, 2008 WL 2853470 at *4 (noting that the statutes contemplated by *Begay* must "criminalize purposeful or deliberate conduct").

Second, the defendant cites *United States* v. *Papakee*, 550 F. Supp. 2d 991 (N.D. Iowa 2008). *Papakee*, however, militates for the Government's reading of *Begay*. In *Papakee*, the district court applied a *Begay* analysis to determine whether Sexual Abuse in Indian Country – which "the victim . . . is always unconscious or otherwise unable to resist," *id.* at 999 – was a crime of violence for the purposes of U.S.S.G. § 4B1.2. It held that it was, finding that "Sexual Abuse in Indian Country is potentially more dangerous when firearms are involved . . . Simply put, Sexual Abuse in Indian County is a far cry from the drunk driving statute at issue in *Begay* or crimes that 'impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all.'" *Id.* at 1002 (quoting *Begay*, 128 S. Ct. at 1585). *Papakee* demonstrates that the crime need not fit into a narrow definition of burglary, arson or extortion or involve explosives – rather, the purposeful, aggressive and violent nature of the conduct is sufficient to bring the crime within the scope of a violent felony. Indeed, the concerns voiced by the *Papakee* court mirrored the concerns about theft from a person:

> If the victim were to wake from her stupor or come to fully apprise
> the nature of the defendant's actions, the defendant could murder
> his victim to cover up his crime.

*Id.* at 1002-03. In other words, much like with burglary and with theft from a person, the court's concern arose largely from the violence that might occur not if the crime went smoothly, but rather if it were unexpectedly interrupted or otherwise thwarted.

Accordingly, the defendant should be sentenced as an Armed Career Criminal under the enhancements for which Title 18, United States Code, Section 924(e) and U.S.S.G. § 4B1.4 provide.

**B.    A Sentence Within The Guidelines Range Would Be Both Reasonable And Sufficient, But No More Than Necessary, To Achieve The Legitimate Purposes Of Sentencing.**

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" – that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense

Hon. Sidney H. Stein
July 31, 2008
Page 16 of 18

and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall* v. *United States*, 128 S. Ct. at 596 n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 596 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita* v. *United States*, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 127 S. Ct. at 597.

Here, the defendant's criminal actions, when combined with his past, demonstrate a need for a significant period of incarceration. He has demonstrated an utter disregard for the law and for others, evincing an extraordinarily violent history, and spending the vast majority of his adult life in prison, largely on the basis [11] of violent acts. Indeed, at the age of 16, the defendant

---

[11] The defendant was also arrested at age 15 for two counts of robbery in the second degree, one count of assault in the second degree and one count of larceny in the fourth degree,

Hon. Sidney H. Stein
July 31, 2008
Page 17 of 18

engaged in two violent acts: kicking, punching and choking another young man, alongside two other co-defendants (PSR ¶¶ 27-29); and punching a staff member in the face at the Goshen Secure Facility. (PSR ¶¶ 31-32). Mere months later, he graduated to murder,[12] when he attempted to rob a man of a gold chain, and shot his victim when he resisted, just blocks from where he committed the instant offense. (PSR ¶¶ 33-34). It took the defendant less than six months after he was paroled before his parole was revoked. (PSR ¶¶ 35). The next time he was paroled, it took him less than six months before he committed an armed robbery of an individual at his car service, again, just blocks away from where he committed the instant offense. (PSR ¶¶ 35-38). While an inmate, the defendant was arrested no less than nine times, including arrests for violent acts, resulting in, among other things, a guilty plea to attempted assault in the second degree. (PSR ¶¶ 41-51, 56-65). When he was again paroled, it took him less than five months until he committed the instant offense, which once again showed an utter disregard for the safety of others, as the defendant was firing a gun in a residential neighborhood. The Presentence Report is absolutely right in its characterization of the defendant as "an extremely dangerous individual who has shown a penchant to act with little regard for the consequences." (PSR 22).

The defendant's violence is not only toward society at large, but at legal institutions. A number of his arrests, and a number of his convictions, arise from his actions while incarcerated, including assaults on correctional officers. In this case, moreover, the defendant continued to show his lack of respect for the legal system in general, in this Court in particular, by perjuring himself on the stand.

A sentence in the Guidelines range of 235-293 months' imprisonment would be reasonable and appropriate under the policies set forth in the Guidelines. Such a sentence would be appropriate, as well, under the section 3553(a) factors: among other things, it would take into account and reflect the nature and circumstances of the offense and the history and characteristics of the defendant by reflecting both the fact that the defendant committed a serious offense – possessing and firing a handgun in a residential neighborhood despite being a convicted felon– the fact that he did so only shortly after having been paroled, which kept with his pattern of committing offenses shortly after being released into society over and over and over again, the fact that his past is littered with violent offenses that show no regard for others, including their lives, and the fact that he then lied to the Court in an attempt to escape punishment for his crime (18 U.S.C. § 3553(a)(1)); it would reflect the seriousness of the possession and firing of a dangerous weapon by the epitome of an individual out of whose hands Congress intended to keep these guns and the defendant's decision to obstruct justice (18 U.S.C. § 3553(a)(2)(A)); it would afford deterrence to other violent felons who act as if possession and use of a gun is a right that they enjoy irrespective of the effect on those around them (18 U.S.C. § 3553(a)(2)(B)); and it would protect the public from further crimes of the defendant (whose history shows a definite

---

but no disposition was available to the United States Probation Office. (PSR ¶¶ 54-55).

[12]   Although the defendant pled guilty to attempted murder in the second degree, he did, in fact, shoot the victim to death. (PSR ¶ 34).

Hon. Sidney H. Stein
July 31, 2008
Page 18 of 18

and determined pattern of recidivism and violence (especially since his pattern of conduct has appeared to be to commit violent offenses within months of his release from custody) (18 U.S.C. § 3553(a)(2)(C); and, by falling within the Guidelines range, it would reflect both the Sentencing Guidelines and the pertinent policy statements issued by the Sentencing Commission and it would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (18 U.S.C. §§ 3553(a)(4)-(6)).

## Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range of 235-293 months' imprisonment, would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:  /s/
Michael D. Maimin
Assistant United States Attorney
(212) 637-2238

cc:   John J. Byrnes, Esq. (by e-mail and hand)