USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/08 JS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :
UNITED STATES OF AMERICA,     :     07 Cr 749 (SHS)
                                              :
            - v. -                            :     OPINION
                                              :
RAPHAEL RODRIGUEZ,            :
                                              :
                  Defendant.          :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

The issue for resolution, not yet decided by the United States Court of Appeals for the Second Circuit, is whether grand larceny from a person, in violation of New York Penal Law § 155.30(5) is a "violent felony" as that term is used in the Armed Career Criminal Act, 18 U.S.C. § 924(e). Because conduct in violation of New York Penal Law § 155.30(5) "presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), and because theft from a person under New York law is an offense "roughly similar in kind" to burglary, Begay v. United States, --- U.S. ----, ----, 128 S. Ct. 1581, 1585, 170 L. Ed. 2d 490 (2008), the Court concludes that grand larceny from a person in violation of New York Penal Law § 155.30(5) is a violent felony for purposes of ACCA.

I.   BACKGROUND

Following a three-day trial last December, Raphael Rodriguez was convicted by a jury of one count of unlawfully possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g). Section 924(e) of Title 18 of the United States Code, the Armed Career Criminal Act, commonly known by its acronym as "ACCA," provides for a mandatory minimum fifteen-year prison sentence for anyone convicted of violating section 922(g) who has at least three prior convictions, committed on occasions

1

different from one another, "for . . . violent felon[ies] or . . . serious drug offense[s]." 18 U.S.C. § 924(e)(1); Shepard v. United States, 544 U.S. 13, 15 (2005).[1] In addition section 4B1.4 of the United States Sentencing Guidelines ("U.S.S.G.") provides, *inter alia*, for a minimum offense level of 33 for defendants who are "subject to . . . enhanced sentence[s] under the provisions of 18 U.S.C. § 924(e)." U.S.S.G. §§ 4B1.4(a), (b)(3)(B). At issue is whether Rodriguez's criminal history includes three ACCA predicate convictions.

Rodriguez concedes that he has three prior felony convictions for offenses committed on occasions different from one another. Specifically, he has previously been convicted of attempted murder, grand larceny from a person, and attempted assault. Rodriguez further concedes that the attempted murder and attempted assault convictions are violent felonies and qualify as ACCA predicate offenses. He argues, however, that his conviction for grand larceny from a person pursuant to New York Penal Law § 155.30(5) is not an ACCA predicate violent felony.

**II.   DISCUSSION**

   A.   Legal Standard

The Armed Career Criminal Act provides in relevant part that,

the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that - -

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

Rodriguez was convicted of violating New York Penal Law § 155.30(5), which

---

[1] Rodriguez has no known prior convictions for "serious drug offenses."

2

provides that, "[a] person is guilty of larceny in the fourth degree when he steals property and when . . . [t]he property . . . is taken from the person of another." The government concedes, as it must, that section 155.30(5) does not require "the use, attempted use, or threatened use of physical force" as an element of the offense and therefore does not qualify as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i). It is equally clear that New York Penal Law § 155.30(5) fails to qualify as a violent felony under the first clause of 18 U.S.C. § 924(e)(2)(B)(ii) because it does not criminalize burglary, arson, extortion, or the use of explosives. The only question presented here is whether a conviction pursuant to New York Penal Law § 155.30(5) qualifies as an ACCA predicate on the ground that it "otherwise involves conduct that presents a serious potential risk of physical injury to another" under the so-called "residual clause" of 18 U.S.C. § 924(e)(2)(B)(ii). See United States v. Gray, --- F.3d ----, ----, No. 07-cr-3636, 2008 WL 2853470, at *4 n.2, (2d Cir. Jul. 25, 2008).[2]

In determining whether a conviction satisfies the definition of violent felony in the residual clause courts use a "'categorical approach' . . . [under which] the sentencing court must [generally] 'look only to the fact of conviction and the statutory definition of the prior offense.'" United States v. Lynch, 518 F.3d 164, 168-69 (2d Cir. 2008) (quoting United States v. Rosa, 507 F.3d 142, 151 (2d Cir. 2007) and Taylor v. United States, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990)); see also Begay, 128 S. Ct. at 1584; United States v. Andrello, 9 F.3d 247, 249 (2d Cir. 1993). "That is, [a court must generally] consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender."

---

[2] Gray addressed the meaning of the term "crime of violence" as used in section 4B1.2(a)(2) of the Guidelines, rather than the term "violent felony" as used in 18 U.S.C. § 924(e). However, "because the operative language of U.S.S.G. § 4B1.2(a)(2) and [18 U.S.C. § 924(e)] is identical," Gray, 2008 WL 2853470, at *2, interpretations of the term "crime of violence" are relevant to the meaning of the term "violent felony" under ACCA. See United States v. Palmer, 68 F.3d 52, 55 (2d Cir. 1995).

3

James v. United States, --- U.S. ----, ----, 127 S. Ct. 1586, 1594, 167 L. Ed. 2d 532 (2007) (internal emphasis omitted). In making this categorical determination, it is not the case "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony . . . [r]ather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case" satisfies the definition of violent felony under the residual clause. Id. at 1597; see also Begay, 128 S. Ct. at 1584.

Whether a conviction qualifies as an ACCA predicate under the residual clause involves a two-part inquiry. Initially, only those crimes that "create significant risks of bodily injury or confrontation that might result in bodily injury" qualify as violent felonies under the residual clause. James, 127 S. Ct. at 1592. Second, assuming that the crime poses a "serious potential risk of physical injury," it will nevertheless fail to qualify as a violent felony unless it is "roughly similar in kind" to the offenses specifically enumerated by Congress in the first clause of 18 U.S.C. § 924(e)(2)(B)(ii) as examples of violent felonies—"burglary, arson, extortion, or crimes involving the use of explosives." Begay, 128 S. Ct. at 1584-85; Gray, 2008 WL 2853470, at *3.

    B.    Application

        1.    *Grand Larceny From the Person of Another in Violation of New York Penal Law § 155.30(5) Presents a "Serious Potential Risk of Physical Injury to Another."*

Pursuant to New York Penal Law § 155.30(5), "[a] person is guilty of grand larceny in the fourth degree when he steals property and . . . [t]he property . . . is taken from the person of another." Whether a crime presents a "serious potential risk of physical injury" to others within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii) may be determined by comparing the

4

degree of risk inherent in the crime with the degree of risk posed by its "closest analog" among the enumerated ACCA predicates of burglary, arson, extortion, and crimes involving the use of explosives. James, 127 S. Ct at 1594; see also Gray, 2008 WL 2853470, at *3. In this case, the closest analog is burglary.

"The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." James, 127 S. Ct. at 1594; see also Andrello, 9 F.3d at 249. In such a confrontation, a significant risk of injury inheres not only because a victim or bystander may use violence in attempting to repel the attack, but also because the burglar may use violence to complete his criminal objective or to escape or both. See Taylor, 495 U.S. at 588.

Clearly, the risks of bodily injury inherent in burglary are similar to the risks involved when one steals property from the person of another. As one court has stated, when a defendant takes property from the person of a victim, "the risk of ensuing struggle is omnipresent." United States v. De Jesus, 984 F.2d 21, 24 (1st Cir. 1993). Indeed, whether a particular burglary involves a violent confrontation is often a function of whether the building that is burglarized happens to have an occupant inside, but when property is stolen from the person "the victim is always present at the crime scene" and the potential for a violent confrontation is "if anything, substantially greater," than in the case of burglary. United States v. Mobley, 818 F. Supp. 164, 166 (E.D. Va. 1993), aff'd 40 F.3d 688 (4th Cir. 1994). In determining that a statute with similar language to New York Penal Law § 155.30(5)

5

described a violent felony within the meaning of the residual clause, the Ninth Circuit cogently noted that when a thief:

> seizes property from the victim's person, [he] creates a serious risk of physical injury to another; the victim might resist, or a bystander intervene, and a struggle ensue. Even though the thief might sometimes, by stealth, avoid immediate detection by his victim, he risks such a confrontation at every encounter. Viewed ex ante, the thief's conduct presents a serious potential risk of physical injury to another.
>
> To be sure, every grand theft from a person does not result in a struggle or in physical injury. It is possible that if physical injury did result, the perpetrator might be charged with a different crime having as an element the use of physical force. This is of no moment, however, since the conduct need not always result in physical injury. [Title 18, section 924(e)] does not direct our attention to the actual results of the conduct viewed ex post, but to the risks posed by the conduct viewed ex ante.

United States v. Wofford, 122 F.3d 787, 793 (9th Cir. 1997).

Although the Second Circuit has not spoken to the issue, each of the seven United States Courts of Appeals that has considered the question has held that larceny from the person presents a serious potential risk of physical injury to others. See, e.g., De Jesus, 984 F.2d at 23-25 (1st Cir. 1993); United States v. Smith, 359 F.3d 662, 665 (4th Cir. 2004); United States v. Hawley, 516 F.3d 264, 269-70 (5th Cir. 2008); United States v. Payne, 163 F.3d 371, 373-75 (6th Cir. 1998); United States v. Howze, 343 F.3d 919, 923 (7th Cir. 2003); United States v. Strong, 415 F.3d 902, 908 (8th Cir. 2005); United States v. Jennings, 515 F.3d 980, 988 (9th Cir. 2008).

Indeed, certain of those cases involved offenses that are less likely to trigger a violent confrontation than a violation of New York Penal Law § 155.30(5). For example, in De Jesus, the First Circuit addressed a prior conviction under a Massachusetts statute that had been interpreted to criminalize the theft of property not only "from the victim's person [but also] 'from the *presence* of the victim,' that is, from '*within his area of control*.'" 984 F.2d at

23 (quoting Commonwealth v. Subilosky, 352 Mass. 153, 166, 224 N.E.2d 197, 206 (1967)) (emphases added). The court rejected the defense contention that because the statute did not require theft "directly from the victim's person" and included theft from the victim's vicinity it failed to categorically define a crime presenting a serious risk of injury. Id. at 24. In other words, the First Circuit determined that the theft of property from *near* a victim, which would seem to present less of a risk of violent confrontation than the theft of property from the victim himself or herself, nevertheless presented sufficient risk to support a sentencing enhancement.

In contrast to the Massachusetts statute at issue in De Jesus, New York law requires that the element of the crime that requires that the property be "taken from the person of another" must be satisfied by proof that the property was physically connected to the person of the victim, and may not be satisfied by proof that the property was merely "within the immediate custody and control of the victim." People v. Cheatham, 168 A.D.2d 258, 259, 562 N.Y.S.2d 493 (1st Dep't 1990); see also People v. Haynes, 91 N.Y.2d 966, 967, 672 N.Y.S.2d 845, 695 N.E.2d 714 (1998); People v. Auguste, 283 A.D.2d 373, 373-74, 728 N.Y.S.2d 8 (1st Dep't 2001); People v. Holder, 5 Misc. 3d 1029(A), 799 N.Y.S.2d 163 (S. Ct. N.Y. Co. 2004). Thus, there can be little doubt that conduct in violation of New York Penal Law § 155.30(5) presents a "serious potential risk of physical injury" to others.

In support of Rodriguez's contention that larceny from the person does not create significant risks of injury, he points to United States v. Mathis, 963 F.2d 399, 409 (D.C. Cir. 1992), which held that a robbery statute that could be violated by "stealthy seizure" did not categorically describe a violent felony under ACCA. Mathis is inapposite, however, because the D.C. Circuit considered only whether the crime at issue qualified as a violent felony

7

pursuant to 18 U.S.C. § 924(e)(2)(B)(i), which requires that a prior conviction have *as an element of the crime* the use, attempted use, or threatened use of physical force. Id. at 401-02, 407-09. The Mathis court analyzed a statute which, on its face included the element that a defendant "by force or violence" take a thing of value from the person of another. Id. at 408. However, pursuant to judicial interpretation, the force or violence element could be met "when the only force used is that necessary to lift a wallet from a pocket." Id. at 409. Noting that "it is not true that whatever a state happens to mean by 'force' will invariably correspond to the meaning of that term which Congress drafted into § 924(e)," the court determined that the District of Columbia statute failed to categorically define a violent felony under section 924(e)(2)(B)(i). Id. Because the Mathis court did not consider whether the offense of "stealthy seizure" qualifies as a violent felony pursuant to 18 U.S.C. § 924(e)(2)(B)(ii)'s residual clause, it is not on point here. See also Mobley, 40 F.3d at 691, 695-96 (holding that the same District of Columbia statute at issue in Mathis described a violent felony pursuant to the residual clause because "whenever the pickpocketing fails and the criminal is detected, a confrontation is likely, and the stealthy pickpocketing can progress into something far uglier").

Rodriguez also points to dicta in Taylor that in section 924(e)(2)(B)(ii) "Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons." 495 U.S. at 588. Rodriguez uses that quotation to argue that the Supreme Court was saying that although burglary has a potential for harm to others, larceny does not. The Supreme Court did not elaborate as to what it meant by the word "larceny," which could, of course, refer to a broad range of conduct, much of which would not present

8

any risk of violent confrontation. See, e.g., New York Penal Law § 155.05(2)(b) (defining larceny to include, *inter alia*, the "exercise[ of] control over property of another which [is] know[n] to have been . . . delivered under a mistake as to the identity of the recipient . . . without taking reasonable measures to return such property to the owner"). Rodriguez cannot take advantage of the Supreme Court's stray statement because he was convicted of a specific type of larceny—larceny from the person of another—which necessarily involves serious potential risks of injury. Consistent with the views of the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits, the Court holds that New York Penal Law § 155.30(5) categorically describes an offense that presents a "serious potential risk of physical injury to another" within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii).

    2. *Grand Larceny From the Person of Another in Violation of New York Penal Law § 155.30(5) is "Roughly Similar in Kind" to Burglary*

In Begay, the Supreme Court by a 6-3 vote, held that a prior conviction does not qualify as an ACCA predicate if it is "too unlike the . . . examples [listed in 18 U.S.C. § 924(e)(2)(B)(ii)] to believe that Congress intended the provision to cover it." 128 S. Ct. at 1584. Put another way, the Court determined that "clause (ii) covers [only] crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Id. at 1585. Applying this arguably new rule, the Court determined that driving under the influence of alcohol in violation of New Mexico law is not an ACCA predicate because it is too dissimilar from the listed offenses of "burglary, arson, or extortion, [or crimes that] involve[ the] use of explosives." Id. at 1586-88.

In his analysis, Justice Breyer, writing for the majority, stressed that "the [Armed Career Criminal] Act's basic purpose[] . . . [a]s suggested by its title . . . [is to address] the special danger created when a particular type of offender—a violent criminal or drug

9

trafficker—possesses a gun. In order to determine which offenders fall into this category, the Act looks to past crimes . . . because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose where he to possess a gun." Id. (citations omitted). Certain "strict liability" crimes such as driving under the influence of alcohol may present substantial possibilities of injury to others and thereby "reveal a degree of callousness toward risk." Id. at 1587. However, because Congress sought in ACCA to differentiate between prior convictions that are "relevan[t] to the possibility of future danger with a gun" from those that are not, the Court determined that risk creation was insufficient and that a prior conviction, in order to qualify as an ACCA predicate under the residual clause, must additionally have involved conduct of a type that "show[s] an increased likelihood that the offender is the kind of person who might [in the future] deliberately point the gun and pull the trigger." Id. In 18 U.S.C. § 924(e)(2)(B)(ii) Congress listed several offenses—burglary, arson, extortion, and crimes involving the use of explosives—as examples of offenses that are "associated with a likelihood of future . . . 'armed career criminal' behavior." Id. at 1588.

In determining that the New Mexico offense of driving under the influence of alcohol was not an ACCA predicate, the Supreme Court noted that "DUI differs from the example crimes . . . in at least one pertinent, and important, respect. The listed crimes all typically involve purposeful, 'violent,' and 'aggressive' conduct." Id. at 1586. That is, the Court determined that, although driving under the influence "posed a similar degree of risk as the listed crimes, it was different in respect to the way the risk was produced." Gray, 2008 WL 2853470, at * 3. The Court did not elaborate on what it meant by writing that burglary, for instance, is typically "purposeful, violent, and aggressive," but encountered no difficulty in

10

determining that driving under the influence failed to satisfy that description, at a minimum because it was an offense without an intent or purpose element. Begay, 128 S. Ct. at 1587 ("[T]his Court has said that, unlike the example crimes, the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate."). Following Begay, the Second Circuit has held that, at a minimum, in order for an offense to satisfy the "roughly similar in kind" test, it must, like the listed offenses, involve "intentional-purposeful-conduct." Gray, 2008 WL 2853470, at * 3.

Rodriguez concedes that larceny from the person in violation of New York Penal Law § 155.30(5) involves purposeful conduct. He argues, however, that the offense is not "aggressive" or "violent" and therefore differs from the listed crimes to such a degree that it is not an ACCA predicate notwithstanding the fact that it presents a serious potential risk of physical injury to others. As Rodriguez points out, New York Penal Law § 155.30(5) encompasses conduct that appears "non-violent" or "non-aggressive" at first blush. See Haynes, 91 N.Y.2d at 967 (statute violated where a defendant contacted a victim slightly during a purse snatching); People v. Walker, 186 A.D.2d 364, 364, 588 N.Y.S.2d 160 (1st Dep't 1992) (defendant and co-defendant picked the victim's pocket and led police officers on a chase); People v. Evans, 131 A.D.2d 502, 502, 516 N.Y.S.2d 251 (2d Dep't 1987) (defendant bumped into victim, snatched her purse, and led security guards on a two-block chase); People v. Davis, 71 A.D.2d 607, 607, 418 N.Y.S.2d 127 (2d Dep't 1979) ("defendant 'snatched' a purse and a shopping bag from the victim"); see also People v. Nelson, 36 A.D.3d 532, 533-34, 827 N.Y.S.2d 154 (1st Dep't 2007) (defendant ordered victims to turn over their valuables). However, the Begay analysis cannot be satisfied by a simple appeal to intuitions about which crimes are "violent" and "aggressive" and which are not. Instead, what

11

is required is a comparison of the offense at issue with the crimes that Congress provided as examples of violent felonies—that is, examples of offenses "associated with a likelihood of future violent, aggressive, and purposeful 'armed career criminal' behavior." Begay, 128 S. Ct. at 1588.

The most natural comparison in this case is between larceny from the person in violation of New York law and the listed offense of burglary. As used in 18 U.S.C. § 924(e)(2)(B)(ii), burglary has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor, 495 U.S. at 599. As one court has pointed out, it is not at all obvious that burglary is "violent" or "aggressive" in an everyday sense. United States v. Williams, 529 F.3d 1, 7 n.7 (1st Cir. 2008) ("Burglary . . . can be described as purposeful but not, at least in most instances, as purposely violent or necessarily aggressive."); see also Taylor, 495 U.S. at 597 ("Congress thought that . . . burglary . . . so often presented a risk of injury to persons, or [was] so often committed by career criminals, that [it] should be included in the enhancement statute *even though . . . [it] does not necessarily involve the use or threat of force against a person*.") (emphasis added).

In order to determine whether larceny from the person is "roughly similar in kind" to burglary along the axis of "violence" or "aggressiveness," it is necessary to determine *how* burglary is itself "violent" or "aggressive" in the typical case. But the answer to that question has already been given: burglary is "violent" or "aggressive" in the sense that a burglar's entry into a building "often creates the possibility of a violent confrontation . . . [a]nd the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape." Taylor, 495 U.S. at 588. As noted above, larceny from the person creates a substantially similar possibility of violent confrontation and

involves, in the typical case, a similar awareness on the part of the defendant that his conduct may provoke a reaction as well as the concomitant willingness to use violence to obtain his criminal objective or to escape or both. In the same way that a burglar is "violent" or "aggressive" in his willingness to enter or remain in a building with the intent to commit a crime despite the possibility of a physical confrontation, a person who violates New York Penal Law § 155.30(5) is "violent" and "aggressive" within the meaning of the Begay "rough similarity" test.

Recent caselaw supports this Court's holding. The only other court to have specifically addressed whether larceny from a person is an ACCA predicate in the wake of Begay held that the offense was similar in kind to burglary because both "involve . . . the invasion of one's personal space." United States v. Harris, No. 08-cr-45, 2008 WL 2228526, at *3 (E.D. Va. May 29, 2008). In addition, courts have found other offenses to be ACCA predicates for reasons similar to those presented here. In United States v. Charles, --- F. Supp. 2d ----, ----, 2008 WL 2832172, at *5-9 (D. Kan. July 23, 2008), the court determined that escape from custody in violation of 18 U.S.C. § 751(a) is roughly similar in kind to burglary because both involve an offender's likely appreciation that his conduct could provoke a confrontation and his likely willingness to use violence to complete his criminal objective. Similarly, in Williams the First Circuit determined that the offense of transporting a minor for prostitution was roughly similar to the exemplar crimes because it involved an appreciation and disregard of the risk that third parties would physically harm the victim. 529 F.3d at 7. Further, those prior felonies that have been deemed to fail the Begay "rough similarity" test are not similar to larceny from a person. See, e.g., Gray, 2008 WL 2853470, at *3-4 (holding that reckless endangerment is not roughly similar to the exemplar offenses because it lacks an

element of purposeful or intentional conduct); United States v. Urbano, No. 07-10160-01, 2008 WL 1995074, at *2-3 (D. Kan. May 6, 2008) (the offense of "fleeing and eluding" a police officer in violation of Kansas law is not similar in kind to the exemplar offenses because it could be accomplished by "merely failing to stop after an officer signals . . . [an] individual to stop").

The Court concludes that larceny from a person in violation of New York Penal Law § 155.30(5) is "roughly similar in kind" to burglary.

### III. CONCLUSION

Because larceny from the person in violation of New York Penal Law § 155.30(5) presents a "serious potential risk of physical injury to another" and is "roughly similar in kind" to burglary, Rodriguez's prior conviction for larceny from the person is a violent felony within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii). See Begay 128 S. Ct. at 1584-85. Because Rodriguez's prior convictions for attempted murder and attempted assault also qualify as ACCA predicate offenses, the provisions of 18 U.S.C. § 924(e)(1) apply to this case and the Court will sentence Rodriguez pursuant to the Armed Career Criminal Act.

Dated: New York, New York
August 12, 2008

Sidney H. Stein, U.S.D.J.