USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

RAPHAEL RODRIGUEZ,

                Defendant.

07-Cr-749 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Defendant Raphael Rodriguez moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Rodriguez brings several claims under the recent U.S. Supreme Court decisions *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Haymond*, 139 S. Ct. 2369 (2019). Because Rodriguez's claims under *Rehaif* and *Haymond* are clearly meritless, his motion is denied.

## I. BACKGROUND

### A. Rodriguez's Extensive Criminal Record

Rodriguez's serious and frequent encounters with the criminal justice system began in his adolescence. As a teenager, Rodriguez spent several years at a youth detention facility as punishment for committing several offenses. (PSR ¶¶ 25–32, 72.) The nature of his conduct quickly escalated. In May 1994, Rodriguez pled guilty to attempted murder in the second degree and was sentenced to four-to-twelve years' incarceration. (*Id.* ¶¶ 33–34.) Less than two years after his release, Rodriguez was arrested for grand larceny in the fourth degree for robbing a car service employee at gunpoint in June 2004. (*Id.* ¶¶ 36–38, 73.)

While awaiting disposition on the grand larceny charge at Riker's Island, Rodriguez continued to engage in violent criminal conduct. In February 2005, Rodriguez kicked a correctional officer, breaking his finger and necessitating medical attention. (*Id.* ¶ 45.) As a result, he was charged with attempted assault in the second degree. (*Id.* ¶ 44.) In March 2005, Rodriguez "grabbed a correctional officer by his feet and attempted to throw him to the ground," and was again charged with attempted assault in the second degree. (*Id.* ¶¶ 41–46.)[1]

---

[1] At Rodriguez's sentencing hearing for the case underlying this petition, defense counsel conceded that Rodriguez was charged with nine additional offenses during the roughly three years he spent on Riker's Island. (Sent. Tr. at 11, ECF No. 28.) The PSR also reflects that Rodriguez amassed a long list of other offenses while incarcerated at Riker's. (*See, e.g.*, PSR ¶¶ 48–49 (possessing tobacco), 50–51 (refusing to

On September 11, 2006, Rodriguez pled guilty to the grand larceny charge and assault charge in New York state court.[2] (*See* Opp'n Ex. A at 4–5, ECF No. 48.) During the plea allocution, the presiding state court judge explicitly advised Rodriguez that he was pleading guilty to two Class E felonies, and if he committed another felony within 10 years he would be subject to harsher punishment. (Opp'n Ex. A at 10–11.) The judge then sentenced Rodriguez to two-to-four years' imprisonment on each the two felony counts. (PSR ¶¶ 36, 44.) He remained in state custody until he was released on parole on February 22, 2007. (*Id.* ¶ 40.)

### B. Commission of the Crime in this Case; Indictment; Trial; and Sentencing

On July 19, 2007, not five months after his release, officers arrested Rodriguez for possessing a loaded .38-caliber Taurus revolver. (PSR ¶ 1.) Upon his arrest, it was determined that Rodriguez had been previously convicted of at least three violent felonies, namely (1) his conviction for attempted murder, a Class B felony; (2) his conviction for grand larceny in the fourth degree, a Class E felony; and (3) his conviction for attempted assault in the second degree, a Class E felony. (*Id.* ¶ 9; Indictment, ECF No. 8.) Accordingly, a grand jury in this district returned a one-count indictment charging Rodriguez with, "after having been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, and having at least three previous convictions for a violent felony, . . . unlawfully, willfully, and knowingly did possess in and affecting commerce a firearm, . . . which previously had been shipped and transported in interstate commerce" in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Indictment at 1.)

Rodriguez proceeded to trial before this Court in December 2007. At trial, he testified that he had indeed possessed the gun but claimed self-defense, explaining that he had wrestled the gun away from an alleged robber. (*See* Trial Tr. at 230–41.) The parties stipulated that Rodriguez had been previously convicted of a felony, and the Court instructed the jury that in order to satisfy the mens rea element, the government had to prove only "that the defendant knowingly possessed the firearm." (*Id.* at 372.) The Court did not instruct the jury that the government had to show that Rodriguez knew he was a member of a class of persons forbidden to possess firearms by virtue of his earlier felony conviction. The jury rejected Rodriguez's defense and convicted him of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g).

---

follow the directives of a correctional officer), 56–57 (punching a correctional officer), 58–59 (throwing an object at a correctional officer), 60–62 (throwing an unknown liquid substance at a correctional officer's face), 64–65 (possessing a sharpened plastic comb and a pen tip inserted in a pen).)

[2] Because the two attempted assault charges were consolidated into one case (*see* PSR ¶¶ 43, 46), the charges gave rise to only one predicate felony.

Case 1:07-cr-00749-SHS Document 56 Filed 07/28/20 Page 3 of 8

Before sentencing, the Court determined that Rodriguez's prior conviction for grand larceny was a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Given his other prior convictions for attempted murder and attempted assault, which also qualified as ACCA predicate offenses, the Court concluded that Rodriguez would be sentenced pursuant to ACCA. (ECF No. 22.) Under ACCA, Rodriguez was subject to a mandatory minimum sentence of 180 months and a maximum sentence of life imprisonment. (PSR ¶ 93.) On September 25, 2008, the Court sentenced Rodriguez to 235 months' imprisonment followed by three years' supervised release, a sentence that fell at the bottom of the applicable Guideline range. (*See* Judgment at 2–3, ECF No. 24; PSR ¶ 94.)

### C. Rodriguez's Previous 28 U.S.C. § 2255 Motions

Rodriguez filed his first motion pursuant to 28 U.S.C. § 2255 in December 2010. *See Rodriguez v. United States*, No. 10 Civ. 9172, ECF No. 1. Rodriguez argued that he was improperly sentenced under ACCA and that his lawyer rendered ineffective assistance of counsel at sentencing and on appeal by failing to challenge the imposition of the ACCA enhancement. *Id.* at 7, 12. This Court rejected both arguments and denied Rodriguez's motion. (*See* ECF No. 31.)

In February 2016, Rodriguez filed a second motion to vacate and correct his sentence pursuant to section 2255 in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). *See Rodriguez v. United States*, No. 16 Civ. 1025, ECF No. 1. Rodriguez argued that, under *Johnson*, he no longer qualified as an "armed career criminal" pursuant to ACCA and his sentence should have been subject to a ten-year maximum pursuant to 18 U.S.C. § 924(a)(2), rather than the mandatory minimum sentence of 15 years' imprisonment that was imposed pursuant to section 924(e). *Id.* at 4. The Court granted defendant's motion, which the government did not oppose, and resentenced Rodriguez to the statutory maximum term of ten years' imprisonment followed by the statutory maximum term of three years' supervised release.[3] (*See* ECF Nos. 33, 41.)

The parties agree that Rodriguez has completed his incarceratory sentence for this conviction, but remains in Bureau of Prisons (BOP) custody while he serves a separate, consecutive sentence for killing a fellow inmate while incarcerated for this case. (*See* Mot. at 2, ECF No. 44; Opp'n at 8.) The BOP's online inmate locator lists Rodriguez's expected release date as October 8, 2022. Thus, Rodriguez has yet to begin his term of supervised release.

On December 20, 2019, Rodriguez filed the instant motion under section 2255 in which he argues that he is entitled to have (1) his conviction vacated because under *Rehaif*, an

---

[3] Without the ACCA enhancement, Rodriguez was convicted of a Class C felony. *See* 18 U.S.C. § 3559(a)(3) (Any otherwise unclassified felony with a maximum authorized term of imprisonment of "less than twenty-five years but not more than ten years" is a Class C felony). A defendant convicted of a Class C felony can be sentenced to up to three years' supervised release. 18 U.S.C. § 3583(b)(2).

3

essential element of the crime was neither pled in the indictment, nor proven at trial, nor passed upon by the jury (*see* Mot. at 5–10); and (2) his sentence vacated because his term of supervised release impermissibly extends his punishment beyond the statutory maximum sentence under *Haymond* (*see* Mot. at 12–14). The government opposes the motion. (*See* Opp'n.)

In recent weeks, both parties have submitted letters updating the Court on recent decisions by the U.S. Court of Appeals for the Second Circuit. (*See* ECF Nos. 54, 55.) Notably, in defendant's June 18 letter, he concedes that in light of the Second Circuit's decision in *United States v. Miller*, 954 F.3d 551 (2d Cir. 2020), his core arguments under *Rehaif* are now lacking in merit. (*See* ECF No. 55 at 1.)

## II. Discussion

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner "may move the court which imposed [petitioner's] sentence to vacate, set aside or correct the sentence." Relief under this section is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Generally, a motion made under section 2255 requires a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003). To be entitled to a hearing, the movant "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). No hearing is required when the movant's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962).

Because each of Rodriguez's claims is clearly lacking in merit, as discussed below, a hearing on the motion is unnecessary.[4]

### A. Rodriguez's Claims under *Rehaif*

In June 2019, the Supreme Court issued its opinion in *Rehaif v. United States*, a case addressing the necessary mental state to support a conviction for possessing a firearm in violation of 18 U.S.C. § 922(g), the same crime for which Rodriguez has been convicted. 139 S. Ct. at 2194. Section 922(g) criminalizes the possession of a firearm by certain categories of persons, including individuals like Rodriguez "who ha[ve] been convicted in any court of, a

---

[4] The parties agree that the motion is both timely pursuant to section 2255(f)(3) (*see* Mot. at 8; Opp'n at 1 n.1), and not a successive petition because this is Rodriguez's first section 2255 motion since the Court entered an amended judgment on October 28, 2106 (*see* Mot. at 2 n.1; Opp'n at 12 n.7).

crime punishable by imprisonment for a term exceeding one year."[5]  18 U.S.C. § 922(g)(1). The penalty provision for this crime provides that anyone who "*knowingly* violates" section 922(g) shall be fined or imprisoned for up to ten years. *Rehaif*, 139 S. Ct. at 2194 (quoting 18 U.S.C. § 924(a)(2)). *Rehaif* held that "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status" as a person prohibited from possession a firearm. *Id.* In other words, to establish a conviction under section 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200.

Initially, Rodriguez raised two arguments under *Rehaif*. As Rodriguez now concedes (*see* Mot. at 7; ECF No. 55 at 1), both arguments must fail under controlling Second Circuit precedent.

First, Rodriguez claimed that because the government did not prove that he knew of his status as a felon at the time he committed the crime, and the Court failed to instruct the jury that it needed to find such knowledge, his conviction should be vacated. (*See* Mot. at 5–7.) An identical argument, however, was squarely rejected by the Second Circuit in *United States v. Miller*, 954 F.3d 551 (2d Cir. 2020). There, the defendant argued on direct appeal that the district court committed plain error when, prior to *Rehaif*, it failed to instruct the jury that section 922(g) requires the government to prove his knowledge of his former-felon status. *Id.* at 557. The Second Circuit disagreed and held that it did not rise to the level of reversible plain error because the defendant's PSR revealed that he was sentenced to, and actually served, more than one year in prison for a prior felony conviction which "remove[d] any doubt that [the defendant] was aware of his membership in § 922(g)(1)'s class." *Id.* at 559–60. The panel concluded that it had "no doubt that, had the *Rehaif* issue been foreseen by the district court, [the defendant] would have stipulated to knowledge of his felon status to prevent the jury from hearing evidence of his actual sentence." *Id.* at 560.

As in *Miller*, the record here is replete with evidence that Rodriguez "knew he belonged to the relevant category of persons barred from possessing a firearm," *Rehaif*, 139 S. Ct. at 2200—that is, that he was aware that he was a "person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Indeed, Rodriguez stipulated to his felon status at trial, and his PSR provides overwhelming evidence that he was aware of this status. The PSR shows that Rodriguez had been sentenced to, and in fact served, more than one year on each of his three prior felony convictions. In fact, at the time Rodriguez committed this offense, he had spent roughly 11

---

[5] *Rehaif* did not involve a conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Instead, the defendant in *Rehaif* was charged with possessing a firearm while being a noncitizen "illegally or unlawfully in the United States" in violation of 18 U.S.C. § 922(g)(5). 139 S. Ct. at 2194 (quoting 18 U.S.C. § 922(g)(5)(A)). *Rehaif* makes clear, however, that its holding applies equally to all violations of section 922(g), including being a felon in possession. *See id.*

5

of his 29 years on this earth incarcerated. What is more, during the plea allocution in state court, Rodriguez stated under oath that he understood that he was pleading guilty to two felonies. (Opp'n Ex. A at 10–11.) This criminal history "removes any doubt that [Rodriguez] was aware of his membership in in § 922(g)(1)'s class." *See Miller*, 954 F.3d at 560.

Next, Rodriguez argued that the Court lacked subject matter jurisdiction over this case because "the indictment failed to allege a material element of the offense charged" and the judgment must therefore be vacated. (Mot. at 7.) This argument is squarely foreclosed by *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019), which flatly rejected an identical claim. There, the Second Circuit reasoned that the knowledge element as established in *Rehaif* "is best understood as telling us 'what conduct [the statute] prohibits' and how the statute would be violated, which is ultimately a merits question and not one that affects the jurisdiction of the court to adjudicate the case." *Id.* at 90 (alteration in original) (quoting *United States v. Prado*, 933 F.3d 121, 138 (2d Cir. 2019)). Thus, this claim also fails.

## B. Rodriguez's Claim under *Haymond*

Rodriguez relies on *United States v. Haymond* to support his claim that his total sentence—ten years' incarceration (the statutory maximum) and three years' supervised release—is unconstitutional, although he fails to identify which Constitutional provision he brings this challenge under.

"The court, in imposing a sentence to a term of imprisonment for a felony ..., may include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). Pursuant to 18 U.S.C. § 3583(b), when a defendant commits a Class C felony—as Rodriguez did here—the Court may impose "not more than three years" of supervised release.

Rodriguez contends that the three-year term of supervised release impermissibly extends his total sentence beyond the statutory maximum of ten years' imprisonment. In his view, the "clear import of [*Haymond*] is that those who are sentenced to the statutory maximum in prison can face no additional punishment." (Mot. at 13.)

Rodriguez misunderstands the scope of *Haymond*. In that case, the Supreme Court held that judicial factfinding authorized by 18 U.S.C. § 3583(k) in a revocation of supervised release proceeding for defendants convicted of certain sex crimes violated the Fifth Amendment's Due Process Clause and the Sixth Amendment's right to a jury trial. *Haymond*, 139 S. Ct. at 2378. Although five Justices agreed that section 3583(k) was unconstitutional, no rationale commanded a majority. Nonetheless, both the plurality and the controlling concurrence[6] made clear that the holding was limited to section 3583(k), and not the

---

[6] When a majority of the Supreme Court agrees on the judgment, "but no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by

supervised release statute more generally. *See id.* at 2383 (plurality opinion) ("As we have emphasized, our decision is limited to § 3583(k)—an unusual provision enacted little more than a decade ago—and the *Alleyne* problem raised by its 5-year mandatory minimum term of imprisonment."); *id.* at 2386 (Breyer, J., concurring in the judgment) ("I agree with the plurality that this specific provision of the supervised-release statute, § 3583(k), is unconstitutional.").

The Second Circuit's recent decision in *United States v. Doka*, 955 F.3d 290 (2d Cir. 2020) confirms *Haymond*'s limited reach. In *Doka*, the defendant argued that 18 U.S.C. § 3583(e)(3), which governs revocation of supervised release for most offenses, violated his Fifth and Sixth Amendment rights. *Id.* at 293. The court quickly dismissed the claim, explaining that "*Haymond* did not undermine, let alone overrule, our precedent on the validity of § 3583(e)." *Id.* at 292.

By the same token, *Haymond* does not call into question a district court's authority to impose a term of supervised release, in addition to a maximum incarceratory sentence, pursuant to 18 U.S.C. § 3583(a) and (b). At its core, *Haymond* concerns the revocation of supervised release and a defendant's right to a jury trial when a judge engages in factfinding by the preponderance standard and results in an increased mandatory minimum prison sentence. Here, Rodriguez was convicted of the charged offense by a jury, beyond a reasonable doubt. He was sentenced within the limits of a Congressionally prescribed statute and without any judge-found facts that enhanced his term of imprisonment. Because Rodriguez has yet to begin his term of supervised release, no revocation proceedings have been held. For all these reasons, *Haymond* is clearly inapplicable and Rodriguez's claim is meritless.

## III. CONCLUSION

For the reasons set forth above, Rodriguez's section 2255 motion is denied. Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court concludes that a hearing on the motion is unnecessary. 28 U.S.C. § 2255(b).

---

those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

Further, because Rodriguez has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). The Court certifies that any appeal from an order in this Court would not be in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962).

Dated: New York, New York
       July 28, 2020

SO ORDERED:

Sidney H. Stein, U.S.D.J.

8